LANDWEHR et al., Appellees,

v.

Village of BATAVIA, Appellant.

[Cite as *Landwehr v. Batavia*, 173 Ohio App.3d 599, 2007-Ohio-6035.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2007–01–005.

Decided Nov. 13, 2007.

Law Office of John C. Korfhagen, Inc., and John C. Korfhagen, for appellees, Leroy F. Landwehr and Joan Landwehr.

Surdyk, Dowd & Turner Co., Edward J. Dowd, and Kevin A. Lantz, for appellant.

YOUNG, Presiding Judge.

{¶ 1} Defendant-appellant, the village of Batavia, appeals the denial of a motion for judgment on the pleadings issued by the Clermont County Court of Common Pleas. We reverse the decision of the trial court.

{¶ 2} On November 12, 2003, the Batavia residence of plaintiffs-appellees, Leroy and Joan Landwehr, caught fire. In responding to the fire, the fire department attempted to connect to the fire hydrant closest to the residence. The hydrant did not function properly. As a result, the fire units were required to connect to another hydrant to fight the fire. However, the structure was completely destroyed by the fire.

{¶ 3} Appellees filed a negligence action against the village, claiming that the delay between hydrant connections caused the fire to completely destroy their home. The village moved for a Civ.R. 12(C) judgment on the pleadings, arguing that the village was immune from suit due to sovereign immunity. The trial

court denied the village's motion, holding that the hydrant was part of the municipal water system and that maintaining a water system is a proprietary function, which is excepted from sovereign immunity. The village timely appeals, raising one assignment of error:

{¶ 4} "The trial court erred to the prejudice of the appellant when it denied the village of Batavia's motion for judgment on the pleadings."

{¶ 5} The village argues that the trial court erred by failing to grant its motion for judgment on the pleadings. The village claims that fire hydrants and their maintenance are governmental functions that fall within the protection of sovereign immunity.

{¶ 6} A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 807, 742 N.E.2d 674. Accordingly, we must conduct a de novo review of all legal issues without deference to the determination of the trial court. Id. Dismissal is appropriate under Civ.R. 12(C) when, construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931.

{¶ 7} The Ohio Political Subdivision Tort Liability Act provides: "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

{¶ 8} R.C. 2744.02(B) sets forth the exceptions to the general rule of sovereign immunity. R.C. 2744.02(B)(2) states, "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 9} "Governmental Function" is defined in R.C. 2744.01(C)(1) as "a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

{¶ 10} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

{¶ 11} "(b) A function that is for the common good of all citizens of the state;

{¶ 12} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."

{¶ 13} Further, R.C. 2744.01(C)(2)(a) specifically includes fire services as a governmental function.

{¶ 14} However, R.C. 2744.01(G)(2)(c) provides that the "establishment, maintenance, and operation of * * * a municipal corporation water supply system" is a proprietary function.

{¶ 15} Therefore, the controlling issue in this case is whether fire hydrants are a component of fire services, a governmental function subject to sovereign immunity, or part of the municipal water-supply system, a proprietary function, the negligent maintenance of which would not be protected under sovereign immunity.

{¶ 16} In the case at bar, the trial court relied on *Hall v. Youngstown* (1968), 15 Ohio St.2d 160, 44 O.O.2d 140, 239 N.E.2d 57. In *Hall,* the Ohio Supreme Court held that "[t]he maintenance of fire hydrants, which are an incidental part of a city water system, is a function proprietary in nature, and a city is amenable to an action for any damages caused by its negligent failure to maintain in proper working condition the hydrants included in that water system." Id. at paragraph two of the syllabus. The *Hall* court reasoned that "the utility of a hydrant stems from its connection with a water supply system. Its primary use is to make immediately available a supply of water for the extinguishment of fires. That supply is accessible only because piped to the hydrant area through water mains. The problem in this case as we see it, is the question of where water supply (proprietary in nature) ends, and firefighting (governmental in nature) begins. We believe it to be at the hydrant nozzle." Id. at 165, 44 O.O.2d 140, 239 N.E.2d 57.

{¶ 17} The village urges that *Hall* is no longer good law, due to the enactment of R.C. Chapter 2744, the Ohio Political Subdivision Tort Liability Act. In support of this contention, the village cites *Albertoni v. Robinson* (Aug. 29, 1994), Stark App. No. 94–CA–0023, 1994 WL 478148. In *Albertoni,* the Fifth District held that *Hall* "is a pre-statute case that has been effectively reversed by the exclusion for immunity in discretionary actions contained in R.C. 2744.03(A)(3)." Id. at 3.

{¶ 18} We agree with the Fifth District's holding in *Albertoni*. The Ohio Political Subdivision Tort Liability Act was enacted "as a response to the judicial abolishment of sovereign immunity" and to "codify the common law distinctions." *Gleason,* the Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 510. See also *Behrens v. Springfield City Bd. of Edn.* (June 28, 1995), Clark App. No. 94–CA–92, 1995 WL 386914 ("Following the large scale erosion of the common law doctrine of sovereign immunity by various decisions of the Ohio Supreme Court, the general assembly in 1985 enacted Chapter 2744 of the Ohio Revised Code in a bill entitled The Political Subdivision Tort Liability Act").

{¶ 19} Clearly, with the Political Subdivision Tort Liability Act, the Ohio Legislature sought to codify the sovereign immunity doctrine and overrule all previous conflicting jurisprudence. Further, the act and subsequent Ohio Supreme Court decisions have changed sovereign-immunity analysis, including the reasoning used in *Hall*.

{¶ 20} In *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109, an employee of a company hired by the city of Urbana to assist in improving the city's water-distribution system was injured during a valve installation. In *Hill,* the Ohio Supreme Court held that the city was not entitled to statutory sovereign immunity with respect to a negligence action, because the city was involved in a proprietary function while installing the new valve. Id. at 133, 679 N.E.2d 1109. In finding that the city was amenable to a negligence action, the supreme court held that "the 'establishment, maintenance, and operation' of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a *necessary* part of the system and such activity is a proprietary function of a political subdivision." (Emphasis added.) Id. at 134, 679 N.E.2d 1109 and paragraph two of the syllabus.

{¶ 21} Examining the provisions of the Political Subdivision Tort Liability Act in light of *Hill,* we find that fire hydrants, including the maintenance thereof, are governmental functions. The primary purpose of fire hydrants is for use in firefighting services. Fire services are provided by the government to preserve the public health, safety, and welfare.

{¶ 22} On the other hand, the primary purpose of a municipal water system is to provide a water utility to a municipality and its inhabitants for use in residences, buildings, and property within a municipality. Fire hydrants bear little relation to the water system or its purposes other than a connection to the system. See *Hall,* 15 Ohio St.2d at 165, 44 O.O.2d 140, 239 N.E.2d 57. Additionally, the Revised Code does not include fire hydrants as a component of

the water-supply system. R.C. 715.08 states, "Any municipal corporation may provide for a supply of water, by the construction of wells, pumps, cisterns, aqueducts, water pipes, reservoirs, and water works for the protection of such water supply and to prevent the unnecessary waste of water and the pollution thereof."

{¶ 23} Further, under *Hill*, the Ohio Supreme Court held that the proprietary function of establishing, maintaining, and operating a municipal water system includes only "necessary" parts of the system. Hydrants are incidental parts of the water system. Id.[1] Fire hydrants are installed, operated, and maintained within communities solely for the use of fire services, a governmental function subject to sovereign immunity.

{¶ 24} The village's sole assignment of error is sustained.

{¶ 25} The trial court's judgment is reversed. The village's motion for judgment on the pleadings is granted.

Judgment reversed.

BRESSLER, J., concurs.

WALSH, J., dissents.

WALSH, J., dissenting.

{¶ 26} Appellant asserts that it is entitled to judgment as a matter of law because it provided the hydrant in question for fire protection, which is a governmental function with no applicable statutory exception from immunity. The majority agrees with appellant's argument. I believe the hydrant is part of the water-supply system and is therefore par of a proprietary function. For that reason, I must respectfully dissent.

{¶ 27} The Ohio Supreme Court stated in its 1968 decision of *Hall v. Youngstown*, 15 Ohio St.2d 160, 44 O.O.2d 140, 239 N.E.2d 57, that a hydrant is part of a water-supply system and involves a proprietary function of government. The *Hall* court noted that the utility of a hydrant "stems from its connection with a water supply system." And, as the majority herein noted, the *Hall* court found the proprietary nature ended and the fire fighting (governmental function) began "at the hydrant nozzle."

---

1. We note that even if R.C. Chapter 2744 and *Hill* do not explicitly overrule *Hall*, the supreme court's holding in *Hill* has effectively changed the standard and analysis used in *Hall*. In *Hall*, the supreme court found that a fire hydrant is an "incidental part of the city water system." In *Hill*, the Ohio Supreme Court held that "necessary" parts of the water system fall within the category of proprietary functions. As a result, under the post-R.C. Chapter 2744 standard in *Hill*, fire hydrants would fall within the category of governmental, not proprietary functions.

{¶ 28} However, according to the majority, the *Hall* opinion has fallen into disfavor. The majority agrees with the Fifth District Court of Appeals in *Albertoni v. Robinson* (Aug. 29, 1994), Stark App. No. 94–CA–0023, 1994 WL 478148, which found that the hydrant and the placement thereof was part of a fire-protection system and therefore, a governmental function. The *Albertoni* court distinguished *Hall,* noting that it was a pre-Chapter 2744 case that was "effectively reversed" by the immunity for discretionary actions contained in R.C. 2744.03(A)(3).

{¶ 29} R.C. 2744.03 provides the defenses and immunities available for loss caused by acts of omission in connection with either a governmental or proprietary function. The defenses and immunities available in R.C. 2744.03 may or may not have had a significant impact on the result in *Hall* if the statute existed when *Hall* was considered. Nonetheless, the reasoning used by the *Hall* court when it found that the hydrant was part of the water-supply system and a proprietary function remains sound and has not been adequately distinguished by *Albertoni* or the majority here.

{¶ 30} R.C. 2744.01 defines a proprietary function as including, but not limited to "[t]he establishment, maintenance, and operation of *a utility, including, but not limited to,* a light, gas, power, or heat plant, a railroad, a bus line or other transit company, an airport, and a municipal corporation water supply system." (Emphasis added.)

{¶ 31} The majority finds significance in the fact that the *Hall* court said that hydrants are an incidental part of a city water system. *Hall v. Youngstown,* paragraph two of the syllabus. The majority contrasted the "incidental" language in *Hall* with the holding in *Hill v. Urbana.* The majority stated that "the Ohio Supreme Court [in *Hill* ] found that the proprietary function of establishing, maintaining, and operating a municipal water system includes only 'necessary' parts of the system."

{¶ 32} *Hill v. Urbana* stated as follows: "[T]he 'establishment, maintenance, and operation' of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a necessary part of the system and such activity is a proprietary function of a political subdivision." I do not read this statement as narrowly as the majority does and do not find that this language excludes hydrants from the water-supply system.

{¶ 33} It is common knowledge that water departments use hydrants to flush the water lines when there are breaks in the system or when other repairs or modifications are made to the water-supply system. This use does not implicate fire protection, but *reinforces the role of the hydrant in the proprietary function* of providing a water-supply system.

{¶ 34} In conclusion, the trial court was correct when it denied appellant's motion for judgment on the pleadings. I would overrule appellant's assignment of error, and therefore, I must dissent from the majority opinion.