[Cite as *Hignett v. Schwarz*, 2011-Ohio-3252.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

CRAIG HIGNETT, et al.

    Appellees

    v.

KELLY L. SCHWARZ, et al.

    Appellants

C.A. No.    10CA009762

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    08CV158064

DECISION AND JOURNAL ENTRY

Dated: June 30, 2011

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Craig Hignett fell off the back of a utility vehicle while it was going over a mogul at the Lorain County Fair at 3:00 a.m. He sued the driver of the vehicle, the owner of the vehicle, the Lorain County Agricultural Society, and one of the directors of the fair, asserting negligence. The Agricultural Society moved for summary judgment, asserting that it had immunity, but the trial court denied its motion. The Agricultural Society has appealed, arguing that the trial court incorrectly denied its motion for summary judgment. We affirm because genuine issues of material fact exist regarding whether Mr. Hignett's injuries were caused by the negligent acts of one of the Agricultural Society's directors.

BACKGROUND

**{¶2}** For several years, Mr. Hignett worked as a member of the fair's garbage crew. During the fair, he stayed with his co-worker Michael Schaffer, whose family lived in a house

that was on the fairgrounds. Tom Denes, who was one of the directors of the fair, stayed in a trailer near Mr. Schaffer's house during the fair.

{¶3} According to Mr. Hignett, on the second-to-last day of the 2006 fair, he worked from 3:00 p.m. to 10:00 p.m. When his shift ended, he walked back to Mr. Schaffer's house to change and have a beer. Because it was the last night of the fair, Mr. Schaffer and he decided to take a walk around the fairgrounds. When they returned, they had another beer. While they were drinking, they noticed that the utility vehicle that Mr. Denes used during the fair was not at his trailer. They, therefore, decided to take another walk. Mr. Hignett testified that they walked to the grandstand, where workers were using heavy machinery to build a course for the next day's motocross event. When they walked onto the grandstand, they saw Mr. Denes's utility vehicle by the fairground's electrical building and walked over to it.

{¶4} Mr. Hignett testified that, when they got to the electrical building, Mr. Denes was sitting in the front of the utility vehicle with his girlfriend, Kelly Schwarz. Mr. Denes told them that he had to put up a handicap sign and that they should hop in the bed of the vehicle. Mr. Hignett said that, even though he was not on duty, he complied because Mr. Denes was a fair director and the four of them drove off toward the motocross course.

{¶5} According to Mr. Hignett, instead of putting up the sign, Mr. Denes drove the utility vehicle over the motocross course's moguls, which are small dirt hills. Mr. Hignett said that he was able to stay in the bed but, at one point, Mr. Schaeffer almost fell out of the vehicle. After four or five times around the course, Mr. Denes drove back to the electrical building. Mr. Hignett testified that everyone else got off the utility vehicle, but he stayed in the bed. He said that Mr. Denes told them about a cooler of beer and that Mr. Schaffer brought him one. According to Mr. Hignett, he had one sip of the beer and then Ms. Schwarz and Mr. Denes got

back in the utility vehicle. He handed his beer back to Mr. Schaeffer, and they headed off again. This time, Ms. Schwarz was driving and Mr. Denes was in the passenger seat.

{¶6} Mr. Hignett testified that, when they left the second time, he thought they were going to put up the sign, since they had not done that the first time. Ms. Schwarz, however, drove back to the motocross course and began to go over the moguls faster than Mr. Denes had. At some point while the utility vehicle was going over the first mogul, he fell out of it, breaking several of his vertebrae.

{¶7} Mr. Schaeffer's testimony was similar to Mr. Hignett's with some differences. He testified that, when he and Mr. Hignett were taking their walk around the fairgrounds, they stopped by a camper and had a beer with the occupants. He also said that, when Mr. Denes drove them back to the electrical building after going around the motocross course, everyone got off the utility vehicle. Mr. Schaeffer said that he did not get back on the utility vehicle for the second trip because he had a feeling that Mr. Denes and Ms. Schwarz were going to go back to the motocross course and he did not want to go over the moguls again. Mr. Schaeffer said that he told Mr. Hignett not to get back on the utility vehicle and that the others teased him for not joining them.

{¶8} Mr. Denes testified that he helped with the combine demolition derby, then had a couple of beers and went to bed. Ms. Schwarz woke him up around 2:30 a.m., and they decided to take a look around the fairgrounds to make sure that everything was fine. They drove the utility vehicle to the electrical building, which was near the motocross course. When they arrived, he saw Mr. Hignett and Mr. Schaeffer, who were drinking. According to Mr. Denes, Ms. Schwarz and he also started drinking and socializing. After a little while, Ms. Schwarz and

4

he decided to drive the utility vehicle over the motocross jumps. Before they left, Mr. Hignett and Mr. Schaeffer got in the bed of the vehicle.

{¶9} According to Mr. Denes, after he was finished driving over the jumps, he drove back to the electrical building and continued socializing. About 20 minutes later, Ms. Schwarz told him that she wanted to go back out on the course. Mr. Denes agreed and allowed her to drive, even though he knew that he was the only one who was allowed to operate the utility vehicle. Mr. Denes testified that Mr. Hignett got in the bed again, but Mr. Schaeffer declined because he had hurt a rib the first time. Mr. Denes denied that there was a sign in the vehicle or that he told Mr. Hignett or Mr. Schaeffer that they were going to be putting up a sign. Mr. Denes testified that it was clear to everyone that it was a recreational trip.

{¶10} Ms. Schwarz testified that Mr. Denes and she went to bed around 9:30 p.m. and woke up around 2:00 a.m. Because it was the last night of the fair, they decided to go out and see what was going on. They went to the campground first, but it was quiet, so they went to the electrical building to see how the construction of the motocross course was coming along. According to Ms. Schwarz, when they got to the electrical building, there was a group of people socializing. Mr. Denes told the people who were socializing that he was going to drive the utility vehicle over the moguls, and Mr. Schaeffer and Mr. Hignett jumped in the back of it. After they went over a couple of the moguls, they returned to the electrical building and continued socializing.

{¶11} Ms. Schwarz testified that, after a little while, Mr. Denes and she decided to head back to the trailer. She told Mr. Denes that she wanted to drive this time and to take the utility vehicle over the moguls again. As they were backing out, Mr. Hignett jumped in the bed. Even though Mr. Hignett had not been invited, Ms. Schwarz did not tell him to get out. She also

recalled Mr. Schaeffer telling Mr. Hignett not to get onto the utility vehicle. Ms. Schwarz did not know why Mr. Hignett fell out of the bed. She also did not know how fast she was going when she went over the mogul, but claimed that it was not the vehicle's maximum speed. According to Ms. Schwarz, she had a beer at the electrical building, but had not had any other alcohol since 5:00 p.m. the previous day.

## POLITICAL SUBDIVISION IMMUNITY

{¶12} The Agricultural Society's assignment of error is that the trial court incorrectly denied its motion for summary judgment on the issue of immunity. "Determining whether a political subdivision is immune from liability . . . involves a three-tiered analysis." *Lambert v. Clancy*, 125 Ohio St. 3d 231, 2010-Ohio-1483, at ¶8. "The starting point is the general rule that political subdivisions are immune from tort liability[.]" *Shalkhauser v. Medina*, 148 Ohio App. 3d 41, 2002-Ohio-222, at ¶14. Under Section 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision . . . in connection with a governmental or proprietary function." "At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." *Shalkhauser*, 2002-Ohio-222, at ¶16. "Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability." *Id*.; see R.C. 2744.03(A).

{¶13} In its motion for summary judgment, the Agricultural Society argued that its immunity was not abrogated under Section 2744.02(B)(1) of the Ohio Revised Code, which provides that "political subdivisions are liable for injury . . . caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their

employment and authority." The Agricultural Society argued that the utility vehicle was not a "motor vehicle" and that Ms. Schwarz was not one of its employees acting within the scope of her employment. R.C. 2744.02(B)(1).

{¶14} In his response to the Agricultural Society's motion, Mr. Hignett argued that the reason it does not have immunity is not because of Section 2744.02(B)(1), but Section 2744.02(B)(2), which provides that "political subdivisions are liable for injury . . . caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Mr. Hignett noted that the statutory definition of proprietary function includes "[t]he operation and control of a public stadium," and argued that this situation qualified because the motocross course was constructed at the fairground's grandstand. R.C. 2744.01(G)(2)(e). He also argued that Mr. Denes was an Agricultural Society employee who negligently entrusted the utility vehicle to Ms. Schwarz. See R.C. 2744.01(B) (defining "[e]mployee" as "an officer, agent, employee, or servant . . ."). In its Reply, the Agricultural Society argued that, even if its operation of the fair was a proprietary function, Mr. Hignett had not established "that it was [Mr.] Denes' negligent performance of one of his job duties that caused [the] injury."

{¶15} In its appellate brief, the Agricultural Society has focused its argument, again, on whether its immunity was abrogated under Section 2744.02(B)(1), the provision regarding motor vehicles. It has argued that the utility vehicle is not a "[m]otor vehicle" under Section 2744.01(E), and that, even if it is, Ms. Schwarz was not one of its employees. It has also argued that Mr. Hignett failed to present any evidence that Mr. Denes's negligence in the performance of one of Mr. Denes's duties caused his injuries.

{¶16} Mr. Hignett has argued that the Agricultural Society does not have immunity under Section 2744.02(B)(2) of the Ohio Revised Code because the operation or control of a public stadium is a proprietary function, Mr. Denes was an employee of it, and Mr. Denes was negligent in allowing Ms. Schwarz to operate the utility vehicle on the motocross course. Regarding Mr. Denes's negligence, Mr. Hignett has argued that, not only did he know that only directors were allowed to operate utility vehicles at the fair, but also that Ms. Schwarz had been drinking before operating the vehicle.

{¶17} In its reply brief, the Agricultural Society has argued that driving a utility vehicle over moguls in the middle of the night under the guise of erecting a handicap sign is not a proprietary function. It has argued, instead, that "the erection or nonerection of traffic signs" is a governmental function under Section 2744.01(C)(2)(j). It has also argued that Mr. Denes's activities should be characterized as "maintenance . . . of . . . public grounds," which is a governmental function under Section 2744.01(C)(2)(e).

{¶18} Construing the evidence that was submitted under Rule 56 of the Ohio Rules of Civil Procedure in a light most favorable to Mr. Hignett, we conclude that genuine issues of material fact exist that preclude judgment for the Agricultural Society as a matter of law. In determining whether a function is governmental or proprietary, we must look at the character of the specific activity that resulted in the alleged injury. See *Greene County Agric. Soc. v. Liming*, 89 Ohio St. 3d 551, 560 (2000) ("[T]he issue here is not whether holding a county fair is a governmental function; rather, it is the more specific question of whether conducting the hog show at the county fair and conducting the investigation into the allegations of irregularity surrounding the entry of Big Fat in that hog show are governmental functions."). Although Mr. Hignett claimed that he got in the utility vehicle because Mr. Denes told him he had to put up a

handicap sign, that is not the activity that they were engaged in at the time he was injured. Rather, the undisputed evidence shows that Mr. Hignett was injured while Ms. Schwarz was driving the utility vehicle over one of the motocross course's moguls.

{¶19} Regarding the Agricultural Society's argument that Mr. Denes was not operating or controlling a public stadium, Mr. Denes testified that the reason that he got up at 2:30 a.m. was because workers were in the process of constructing the motocross track and he wanted to make sure everything was fine. According to Mr. Denes, one of his duties was to make sure that "nothing happened out of the ordinary at night." We, therefore, conclude that a genuine issue of material fact exists regarding whether Mr. Denes was operating or exercising control over a public stadium when he allowed Ms. Schwarz to drive the utility vehicle on the motocross course.

{¶20} Regarding the Agricultural Society's argument that Mr. Hignett can not prove that Mr. Denes was negligent because he can not establish the elements of negligent entrustment, the Ohio Supreme Court has held that, "[i]n an action against the owner of a motor vehicle for injury arising from its entrustment for operation, the burden is upon the plaintiff to establish that the motor vehicle was driven with the permission and authority of the owner; that the entrustee was in fact an incompetent driver; and that the owner knew at the time of the entrustment that the entrustee had no driver's license, or that [s]he was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency." *Gulla v. Straus*, 154 Ohio St. 193, paragraph five of the syllabus (1950). The plaintiff must also show that the driver negligently operated the vehicle. *Mastran v. Urichich*, 37 Ohio St. 3d 44, 48 (1988).

{¶21} Despite arguing elsewhere in its brief that the utility vehicle was not a motor vehicle, the Agricultural Society has argued that the *Gulla* test applies. Assuming, without deciding, that it is correct, Mr. Denes testified that he knew Ms. Schwarz consumed alcohol while she was at the electrical building. We, therefore, conclude that there is a genuine issue of material fact regarding whether Mr. Denes knew or should have known that she was incompetent to operate the utility vehicle. See *Gulla v. Straus*, 154 Ohio St. 193, paragraph four of the syllabus (1950) (identifying intoxication as a disability that may make a driver incompetent); *Williamson v. Eclipse Motor Lines Inc.*, 145 Ohio St. 467, 472 (1945) ("In the cases involving the entrustment of a motor vehicle to an intoxicated driver . . . it is generally held that the owner assumes the risk of recklessness of such driver[.]"). A genuine issue of material fact also exists regarding whether Mr. Denes violated his duty to ensure that "nothing happened out of the ordinary at night" when he allowed a non-employee to drive a utility vehicle on the motocross course.

{¶22} The Agricultural Society has also argued that, even if Section 2744.02(B)(2) applies, its immunity is restored by Section 2744.03(A)(5) because Mr. Hignett's injuries were the result of an individual employee's exercise of discretion in determining how to use its equipment. The Agricultural Society, however, did not make this argument in its motion for summary judgment, and it may not raise the issue for the first time on appeal. *State v. Schwarz*, 9th Dist. No. 02CA0042-M, 2003-Ohio-1294, at ¶14 ("Courts have consistently held that arguments which are not raised below may not be considered for the first time on appeal.").

{¶23} An Agricultural Society director allowed Ms. Schwarz to drive Mr. Hignett around the fair's motocross course in the bed of a utility vehicle even though he knew that she was not authorized to operate the vehicle, that she had been drinking, and that the bed of the

vehicle was not designed for passengers. We conclude that the trial court correctly determined that the Agricultural Society was not entitled to judgment on the issue of immunity as a matter of law. The Agricultural Society's assignment of error is overruled.

## CONCLUSION

**{¶24}** The trial court properly denied the Agricultural Society's motion for summary judgment. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
CONCURS

CARR, J.
DISSENTS, SAYING:

**{¶25}** I respectfully dissent because the Agricultural Society met its initial burden to demonstrate that it qualified for blanket immunity under R.C. 2744.02(A)(1) and Hignett failed to meet his reciprocal burden to raise a factual issue that his claims against it fell within any of the R.C. 2744.02(B) exceptions to immunity.

**{¶26}** Through its motion for summary judgment, the Agricultural Society argued, among other things, that it was entitled to immunity under R.C. 2744.02(A)(1), and pointed to evidence that it qualified as a political subdivision and that Hignett's only claims against it were that his injuries were caused by the alleged negligence of its employee in connection with a governmental or proprietary function. That was sufficient to satisfy its initial burden on summary judgment that it qualified for immunity under the first tier of immunity analysis. See, e.g., *Cornelison v. Colosimo*, 11th Dist. No. 2009-T-0099, 2010-Ohio-2527, at ¶34-35; *Harris v. Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, at ¶13-14; *Summerville v. Columbus*, 10th Dist. No. 04AP-1288, 2005-Ohio-5158, at ¶17.

**{¶27}** It is the burden of the plaintiff to move on to the second tier of analysis and raise a genuine issue of material fact that an exception to immunity applies; the political subdivision has no burden to demonstrate that the plaintiff's claims do not fall within any of the exceptions under R.C. 2744.02(B). See id; see, also, *Wolford v. Sanchez*, 9th Dist. No. 05CA008674, 2005-Ohio-6992, at ¶31. Nonetheless, the Agricultural Society argued that Hignett's claims failed to qualify for the immunity exception set forth in R.C. 2744.02(B)(1) because the gator was not a motor

vehicle and it was not operated by its employee or one who was engaged within the scope of employment.

{¶28} After the Agricultural Society demonstrated that it was entitled to blanket immunity under R.C. 2744.02(A)(1), the burden on summary judgment shifted to Hignett to raise a genuine issue of material fact as to whether his claims fell within one of the exceptions to immunity set forth in R.C. 2744.02(B). See *Cornelison*; *Harris*; *Summerville*; *Wolford*. Hignett conceded that his claims against the Agricultural Society did not fall within the immunity exception set forth in R.C. 2744.02(B)(1), but maintained instead that they fell within R.C. 2744.02(B)(2), which provides that "political subdivisions are liable *** for injury *** caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.01(B) defines an "employee" as one "who is authorized to act and is acting within the scope of the *** employee's *** employment for a political subdivision."

{¶29} After quoting the above language, Hignett pointed only to evidence to demonstrate that Denes was employed by the Agricultural Society, that he may have been negligent in allowing Schwartz to drive the gator, and that Schwartz was driving when he sustained his injuries. Despite quoting the definition of "employee" that required that Denes also be acting within the scope of his employment and with the authority of the political subdivision, Hignett failed to point to any evidence that Denes was authorized by the Agricultural Society to allow a nonemployee to drive the gator or that he was acting within the scope of his employment when he did so.

{¶30} In its reply brief, the Agricultural Society explicitly noted that Hignett had failed to meet his summary judgment burden in this regard because he had not pointed to any evidence

that his injury had been caused by Denes' negligent performance of one of his job duties. In fact, it emphasized that "the evidence overwhelmingly demonstrates that at the time of the alleged incident, all individuals were engaged in personal activities and not in the performance of any of their job functions."

{¶31} Because Hignett failed to satisfy his burden on summary judgment to raise a genuine factual issue that his claims against the Agricultural Society fell within an exception to immunity set forth in R.C. 2744.02(B), the trial court erred in denying the motion for summary judgment. I would sustain the assignment of error and reverse the trial court's judgment.

APPEARANCES:

GREGORY A. BECK and ANDREA K. ZIARKO, Attorneys at Law, for Appellant.

ABRAHAM CANTOR, Attorney at Law, for Appellant.

DARREL A. BILANCINI, Attorney at Law, for Appellant.

BRENT L. ENGLISH, Attorney at Law, for Appellant.

MICHAEL J. DUFF, Attorney at Law, for Appellees.