[Cite as *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 2019-Ohio-3158.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

DSS Services, LLC,                                          :

      Plaintiff-Appellee,                              :

v.                                                                   :               No. 18AP-567
                                                                                    (C.P.C. No. 17CV-10621)
Eitel's Towing, LLC,                                        :

      Defendant-Appellee,                           :                (REGULAR CALENDAR)

Pleasant Township Fire Department et al.,       :

      Defendants-Appellants,                       :

---

D E C I S I O N

Rendered on August 6, 2019

---

**On brief:** *Florey Todd, Ltd., Adam F. Florey,* and *Adam R. Todd,* for appellee DSS Services, LLC. **Argued:** *Adam F. Florey.*

**On brief:** *Reminger Co., L.P.A.,* and *Patrick Kasson,* for appellants. **Argued:** *Patrick Kasson.*

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, P. J.

{¶ 1} Defendants-appellants, Pleasant Township and the Pleasant Township Fire Department (collectively "Pleasant Township" or "the township"), appeal a judgment of the Franklin County Court of Common Pleas that denied the township's motion for judgment on the pleadings. For the following reasons, we affirm that judgment in part and reverse it in part.

{¶ 2} On October 31, 2017, plaintiff-appellee, DSS Services, LLC, attempted to deliver a load of gravel to a private residence located in Pleasant Township. During the delivery, DSS' dump truck overturned. The Pleasant Township Fire Department responded

to the accident scene and oversaw the containment of fluids leaking from the truck. The Fire Department then authorized defendant, Eitel's Towing, LCC, to right the overturned truck, despite DSS' request that a different towing company handle the job. The process Eitel's used to right DSS' truck caused significant damage to the truck. After hauling the truck into an upright position, Eitel's refused to release the truck to DSS and, instead, towed it to Eitel's lot. DSS subsequently requested the truck's return, but Eitel's refused to turn over the truck unless DSS paid it for towing and storage services.[1]

{¶ 3} On December 1, 2017, DSS filed suit against Pleasant Township and Eitel's, asserting claims for negligence and conversion.[2] Pleasant Township answered the complaint and moved for judgment on the pleadings pursuant to Civ.R. 12(C). In its motion, Pleasant Township asserted that it was immune from DSS' claims under R.C. Chapter 2744, the Political Subdivision Tort Liability Act. In response, DSS argued that two statutory exceptions, R.C. 2744.02(B)(2) and (5), stripped Pleasant Township of political-subdivision immunity.

{¶ 4} In a decision and entry dated July 5, 2018, the trial court denied Pleasant Township's motion for judgment on the pleadings. Pleasant Township now appeals from that judgment, and it assigns the following error:

> The trial court erred when it denied Pleasant Township's
> Motion for Judgment on the Pleadings asserting
> political[-]subdivision immunity because Pleasant Township,
> as a political subdivision engaged in the governmental function
> of providing fire services or protection, is entitled to immunity,
> and no exception applies to remove that immunity.

{¶ 5} Initially, we must address whether this appeal is moot, which requires further examination of the procedural history of this case. When confronted with Pleasant Township's motion for judgment on the pleadings, DSS filed both a memorandum in opposition *and* a motion for leave to file an amended complaint instanter. The proposed amended complaint, which DSS attached to its motion, included additional factual allegations to strengthen DSS' assertion that political-subdivision immunity did not preclude its claims against Pleasant Township. According to DSS, the July 5, 2018 decision and entry that ruled on Pleasant Township's motion for judgment on the pleadings also

---

[1] We draw the foregoing facts from the allegations contained in DSS' complaint.
[2] DSS also asserted a replevin claim against Eitel's alone.

ruled on DSS' motion for leave to file the amended complaint instanter. DSS contends that in addition to denying Pleasant Township a judgment on the pleadings, the trial court also granted DSS leave to file its amended complaint.

{¶ 6} An amended complaint supplants the original complaint, so the allegations in an amended complaint supersede those in the original complaint. *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 32 (10th Dist.); *S. Ohio Risk Mgt. v. Michael*, 4th Dist. No. 05CA11, 2005-Ohio-5862, ¶ 8. Thus, DSS argues, when the trial court granted it leave to file the amended complaint instanter, the trial court rendered moot the ruling on the motion for judgment on the pleadings because that ruling was based on the allegations contained in the original, defunct complaint.

{¶ 7} DSS' argument rests on an incorrect premise. The trial court did not grant DSS leave to file its amended complaint in the July 5, 2018 decision and entry. That judgment only ruled on the motions for judgment on the pleadings filed by Pleasant Township and Eitel's.[3] An administrative addendum to the judgment, intended to assist the clerk in managing the docket, indicated that the judgment granted DSS' motion for leave. A review of the contents of the judgment, however, reveals that the trial court made no such ruling. This appeal, therefore, is not moot. We thus turn to reviewing the merits of the parties' arguments.[4]

{¶ 8} By its only assignment of error, Pleasant Township argues that the trial court erred in denying its motion for judgment on the pleadings. Pleasant Township contends that the trial court should have granted it judgment on the pleadings because R.C. Chapter 2744 entitles it to immunity from liability for DSS' claims of negligence and conversion.

{¶ 9} In reviewing a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe the material allegations of the complaint and all reasonable inferences drawn from those allegations in favor of the nonmoving party. *Ohio Mfrs.' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10. A court will grant the motion if it finds that, beyond a doubt, the nonmoving party can prove no set of facts in

---

[3] The denial of Eitel's motion for judgment on the pleadings is not at issue in this appeal.

[4] In reviewing the trial court's July 5, 2018 decision and entry, we will not consider the proposed amended complaint. Because the trial court determined Pleasant Township's motion using the complaint, the proposed amended complaint is outside of our purview. In reviewing a judgment, an appellate court " 'may consider only that which was considered by the trial court and nothing more.' " *State v. Ishmail*, 54 Ohio St.2d 402, 405 (1978), quoting *Bennett v. Dayton Mem. Park & Cemetery Assn.*, 88 Ohio App. 98 (2d Dist.1950), paragraph one of the syllabus.

support of its claim for relief. *Id.* " 'Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.' " *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Because the review of a trial court's ruling on a motion for judgment on the pleadings presents only questions of law, appellate courts review such a ruling de novo. *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, ¶ 13.

{¶ 10} In reviewing a motion for judgment on the pleadings, a court must remain mindful that a plaintiff need not prove its case at the pleading stage. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45 (1991). Under the rubric of notice pleading, a plaintiff has no obligation to anticipate the assertion of an affirmative defense and allege facts to disprove that defense in its complaint. *Savoy v. Univ. of Akron*, 10th Dist. No. 11AP-183, 2012-Ohio-1962, ¶ 8. As a complainant does not have the burden of refuting possible affirmative defenses, a court may not grant a motion for judgment on the pleadings on the grounds that the plaintiff did not plead specific facts negating an affirmative defense. *Mangelluzzi v. Morley*, 8th Dist. No. 102272, 2015-Ohio-3143, ¶ 13. Judgment on the pleadings is inappropriate where the pleadings only contain sufficient factual allegations to raise a question of material fact regarding the applicability of an affirmative defense. *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 813 (10th Dist.2000); *accord Harris Farms, LLC v. Madison Twp. Trustees*, 4th Dist. No. 17CA3817, 2018-Ohio-4123, ¶ 18, quoting *Cristino v. Admr., Bur. of Workers' Comp.*, 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 21 ("[U]nless the pleadings 'obviously or conclusively establish[ ] the affirmative defense,' a court may not grant a motion for judgment on the pleadings."); *Amzee Corp. v. Comerica Bank-Midwest*, 10th Dist. No. 01AP-465, 2002-Ohio-3084, ¶ 36 ("[A] motion for judgment on the pleadings cannot be used to obtain an adjudication of the validity of [affirmative] defenses unless the validity can be determined solely from the allegations in the pleadings.").

{¶ 11} Political-subdivision immunity is an affirmative defense. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 6. Although a political subdivision may seek a judgment on the pleadings on the basis of that affirmative defense, asserting political-subdivision immunity "does not place a burden on the non-moving party to affirmatively demonstrate or plead the absence of, or any exception to, immunity." *Ganzhorn v. R&T*

*Fence Co.*, 11th Dist. No. 2010-P-0059, 2011-Ohio-6851, ¶ 13; *accord Harris Farms* at ¶ 17 (quoting *Ganzhorn*). In other words, "a plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage." *Scott v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, ¶ 8 (10th Dist.). Thus, where the face of the complaint does not clearly establish a political subdivision's immunity, a court must deny a motion for judgment on the pleadings. *Id.* at ¶ 17.

{¶ 12} Courts employ a three-tier test to determine whether a political subdivision is immune from liability for tort claims under R.C. Chapter 2744. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15. In the first tier, the court applies the general rule that a political subdivision is immune from liability incurred during the performance of either a governmental or proprietary function. *Id.*; *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, ¶ 11; R.C. 2744.02(A)(1). That immunity, however, is subject to the five exceptions contained in R.C. 2744.02(B). *Doe* at ¶ 12. Accordingly, the second tier of the analysis requires a court to determine whether any of the R.C. 2744.02(B) exceptions apply. *Riffle* at ¶ 15. If the court answers negatively, then the analysis ends, and the political subdivision retains its general grant of immunity. *Harris v. Columbus*, 10th Dist. No. 15AP-792, 2016-Ohio-1036, ¶ 32. If the court answers affirmatively, then it must move to the third tier: determining whether any of the R.C. 2744.03 defenses against liability require the court to reinstate immunity. *Riffle* at ¶ 15; *Doe* at ¶ 12.

{¶ 13} With regard to DSS' negligence claim, Pleasant Township argues that it is immune under the first tier of the test because it is a political subdivision and it was performing a governmental function when DSS' truck sustained damage. In response, DSS contends that Pleasant Township was engaged in a proprietary, not governmental, function when the alleged negligence in righting and towing the truck occurred. By raising this contention, DSS does not contest Pleasant Township's receipt of immunity under the first tier of the analysis. Because a political subdivision is immune under the first tier if its activities are either governmental or proprietary, the distinction between the two functions is irrelevant in the first tier. Rather, DSS challenges the nature of the function at issue because it affects the second tier of the analysis. In addressing the second tier, DSS argues that Pleasant Township is subject to liability under the exception set forth in R.C. 2744.02(B)(2), which renders political subdivisions "liable for injury, death, or loss to

person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 14} To obtain a reversal of the denial of judgment on the pleadings, Pleasant Township must demonstrate that the allegations in the complaint establish, beyond a doubt, that it is entitled to political-subdivision immunity. *See Ohio Mfrs.' Assn.*, 147 Ohio St.3d 42, 2016-Ohio-3038, at ¶ 10 ("Judgment [on the pleadings] is proper only if it appears beyond doubt that the nonmoving party can prove no set of facts entitling it to relief."). To accomplish this, Pleasant Township argues that the R.C. 2744.02(B)(2) exception cannot apply for two reasons: (1) the complaint establishes that the damage to DSS' truck occurred during the performance of a governmental, not proprietary, function; and (2) the complaint establishes that the allegedly negligent acts were performed by an independent contractor, not Pleasant Township employees.

{¶ 15} R.C. 2744.01 defines the mutually exclusive terms of "governmental function" and "proprietary function." *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557 (2000). A function is governmental if it is among those specific functions listed in R.C. 2744.01(C)(2). R.C. 2744.01(C)(1); *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶ 12. Alternatively, a function is governmental if it meets one the three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c). *Moore* at ¶ 12. Under those standards, a function is governmental if: (1) it is imposed upon the state as an obligation of sovereignty, (2) it is carried out for the common good of all citizens of the state, or (3) it promotes or preserves the public peace, health, safety, or welfare; involves activities not customarily engaged in by nongovernmental persons; and is not specified in R.C. 2744.01(G)(2) as a proprietary function. R.C. 2744.01(C)(1)(a) through (c). A "proprietary function" is a function that is either (1) listed in R.C. 2744.01(G)(2), or (2) not described in R.C. 2744.01(C)(1)(a) or (b) and not specified in R.C. 2744.01(C)(2); promotes or preserves the public peace, health, safety, or welfare; and involves activities that are customarily engaged in by nongovernmental persons. R.C. 2744.01(G)(1); *Moore* at ¶ 11.

{¶ 16} To support its contention it was engaged in a governmental function, Pleasant Township points this court to R.C. 2744.01(C)(2)(a), which lists "[t]he provision * * * of * * * fire * * * services or protection" as a governmental function. Pleasant Township asserts that, at the time of DSS' injury, it was providing fire services because it was

responding to and handling an accident scene, where DSS' truck was overturned, leaking fluids, and endangering the environment and public safety.

{¶ 17} In response, DSS contends that Pleasant Township looks at the wrong conduct to determine whether its actions are governmental or proprietary. According to DSS, this court should examine whether the righting and towing of an overturned truck is a governmental or propriety function because its negligence claim arises from those activities. DSS argues that the conduct at issue falls within the definition of "proprietary function" because accident recovery and towing services satisfy the test set forth in R.C. 2744.01(G)(1): those activities (1) are not governmental under R.C. 2744.01(C)(1)(a) or (b) or R.C. 2744.01(C)(2), (2) promote public peace, health, safety, or welfare, and (3) are customarily engaged in by nongovernmental persons. Additionally, DSS claims that towing services are a proprietary function under R.C. 2744.01(G)(2)(c), which lists "[t]he establishment, maintenance, and operation of a utility" as a proprietary function. DSS maintains that an entity engaged in the towing of motor vehicles is a public utility. *See* R.C. 4905.02(A) (stating that the definition of "public utility" includes those entities defined in R.C. 4905.03); R.C. 4905.03(B) (defining "for-hire motor carrier" to mean those entities "engaged in the business of transporting persons or property by motor vehicle for compensation"); R.C. 4921.25(A) (categorizing entities that "engage[ ] in the towing of motor vehicles" as for-hire motor carriers).

{¶ 18} In determining whether a function is governmental or propriety, courts look at the particular, specific activity that allegedly resulted in the plaintiff's injury. *Plank v. Bellefontaine*, 3d Dist. No. 8-17-18, 2017-Ohio-8623, ¶ 20; *Hignett v. Schwarz*, 9th Dist. No. 10CA009762, 2011-Ohio-3252, ¶ 18; *Allied Erecting Dismantling Co. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, ¶ 41 (7th Dist.); *accord Greene*, 89 Ohio St.3d at 560 ("[T]he issue here is not whether holding a county fair is a governmental function; rather, it is the more specific question of whether conducting the hog show at the county fair and conducting the investigation into the allegations of irregularity surrounding the entry of Big Fat in that hog show are governmental functions."); *Scott*, 192 Ohio App.3d 465, 2011-Ohio-677, at ¶ 11 (Emphasis sic.) ("[T]he central issue resolves to whether the *action* for which [the plaintiff] seeks to hold the city liable is part of a governmental function or part of a proprietary function."). Whether a particular function is proprietary or governmental may

depend on the facts of the particular case. *Inland Prods., Inc. v. Columbus*, 193 Ohio App.3d 740, 2011-Ohio-2046, ¶ 36 (10th Dist.); *Scott* at ¶ 17.

{¶ 19} Here, based on the allegations in the complaint, it appears that the method used to right DSS' truck and haul it from the DSS' customer's property caused the damage to the truck. Thus, we must focus on the specific activity of righting and towing the truck, not the more general actions of responding to and handling an accident scene, to determine the nature of the function at issue. The question before us, therefore, is whether righting and towing a truck constitutes a fire service and thereby qualifies as a governmental function.

{¶ 20} R.C. 2744.01(C) does not define "fire services." Some activities, such as fighting a fire, are obviously fire services. Whether the activities at issue in this case constitute fire services is not so easily discernable. Pleasant Township implies that the righting and towing of DSS' truck comes within the definition of "fire services" because the truck was leaking fluids, which endangered public safety. Pleasant Township cites *Landwehr v. Batavia*, 173 Ohio App.3d 599, 2007-Ohio-6035, ¶ 21 (12th Dist.), in which the court stated, "[f]ire services are provided by the government to preserve the public health, safety and welfare."

{¶ 21} While we do not disagree with the cited statement, we cannot deduce from it that *any* activity that preserves public health, safety, and welfare is a fire service. Moreover, the factual allegations in the complaint undermine Pleasant Township's assertion that public safety was in jeopardy during the hoisting and hauling of the truck. According to the complaint, the Pleasant Township Fire Department oversaw the containment of the fluids leaking from the truck *before* the truck was dragged upright. The complaint further provides, "Upon the damming and diking of fluids leaking from the [t]ruck, it presented no further immediate environmental or other public risk." (Compl. at ¶ 16.) Consequently, the factual allegations in the complaint do not support Pleasant Township's assertion that a danger to public safety existed at the relevant time. Without such a danger, Pleasant Township loses its justification for classifying the righting and towing of DSS' truck as a fire service.

{¶ 22} Next, Pleasant Township argues that righting and towing a truck are fire services under R.C. 4513.66(A)(1). Pursuant to R.C. 4513.66(A)(1), a chief of a fire department (or a duly authorized subordinate) may remove or order the removal of an

unoccupied motor vehicle from that portion of a highway, public street, or other property open to the public for purposes of vehicular travel that is ordinarily used for vehicular travel if (1) a motor vehicle accident has occurred on the highway, street, or other property; (2) a motor vehicle (or cargo or personal property from the motor vehicle) is blocking the highway, street, or other property or is otherwise endangering public safety; and (3) the fire chief or his designee has the approval of the law enforcement agency conducting any investigation of the accident.

{¶ 23} Conceivably, R.C. 4513.66(A)(1) authorizes a fire department to right an overturned truck in order to remove it by towing it away. Engagement in those activities, therefore, may qualify as providing fire services. However, the statutory authorization arises only when an accident has occurred on a highway, public street, or other property open to the public for purposes of vehicular travel and the motor vehicle (or its former contents) blocks the thoroughfare or otherwise poses a danger to public safety. Here, the factual allegations of the complaint prohibit R.C. 4513.66(A)(1) from applying to this case. According to the complaint, the accident in this case "occurred on private property, and on a private road or drive." (Compl. at ¶ 12.) Moreover, no factual allegation in the complaint suggests that the overturned truck endangered public safety during the process to hoist it and remove it from DSS' customer's private property. Given the allegations in the complaint, we cannot conclude that the righting and towing of DSS' truck constitutes the provision of fire services pursuant to R.C. 4513.66(A)(1).

{¶ 24} In light of the factual allegations contained in the complaint, we must conclude that a material question of fact remains as to whether Pleasant Township was performing fire services when DSS' truck suffered damage during the hoisting and hauling process. Consequently, Pleasant Township has failed to show, beyond a doubt, that DSS' injury occurred as a result of the exercise of a governmental function, thus precluding application of the R.C. 2744.02(B)(2) exception to immunity.

{¶ 25} We next turn to Pleasant Township's second argument: an independent contractor, not township employees, engaged in the negligent conduct at issue. As we stated above, under the R.C. 2744.02(B)(2) exception, political subdivisions are liable for the "negligent performance of acts by their employees * * *." Pleasant Township contends that DSS cannot rely on the R.C. 2744.02(B)(2) exception because Eitel's was acting as an

independent contractor, and not the township's employee, when it allegedly negligently hauled DSS' truck upright and dragged it from the accident scene.

{¶ 26} As used in R.C. 2744.02(B)(2), "employee" means:

> an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision. "Employee" does not include an independent contractor * * *.

R.C. 2744.01(B). Thus, "employee" has a broad meaning that "includes all agents unless an independent contractor." *Crossley v Esler*, 10th Dist. No. 94AP-497 (Nov. 17, 1994).

{¶ 27} Here, Pleasant Township argues that the R.C. 2744.02(B)(2) exception cannot apply because DSS did not affirmatively plead in its complaint that Eitel's was a township employee. This argument turns the Civ.R. 12(C) standard on its head. As we stated above, a plaintiff has no obligation to affirmatively plead facts demonstrating the applicability of an R.C. 2744.02(B) exception. *See Ganzhorn*, 11th Dist. No. 2010-P-0059, 2011-Ohio-6851, at ¶ 13 (holding a nonmoving party does not carry a burden "to affirmatively demonstrate or plead the absence of, or any exception to, immunity"). DSS, therefore, had no obligation to negate the affirmative defense by pleading that Eitel's was a Pleasant Township employee. Rather, to obtain a reversal of the denial of judgment on the pleadings, Pleasant Township has to point out factual allegations in the complaint that show, beyond a doubt, that it is entitled to political-subdivision immunity due to the inapplicability of the R.C. 2744.02(B)(2) exception. To do that, Pleasant Township must direct us to allegations in the complaint showing that Eitel's was an independent contractor and not an employee.

{¶ 28} In an attempt to meet its burden, Pleasant Township asserts that Eitel's is a private, independent company wholly separate from Pleasant Township. Beyond alleging that Eitel's is an Ohio limited liability company, the complaint contains no factual allegations that support this assertion. Pleasant Township's assertion also ignores the complaint's allegation that, "in the righting of the overturned [t]ruck, Eitel's acted as an instrument, and/or under the control of" Pleasant Township. (Compl. at ¶ 87.) This factual allegation would suggest that Eitel's was, in fact, operating as Pleasant Township's employee when it righted DSS' truck. *See Lakota v. Ashtabula*, 11th Dist. No. 2015-A-0010, 2015-Ohio-3413, ¶ 37 (holding that evidence of a political subdivision's control over the

method or means of doing work indicates a hired entity is an employee, while evidence of the contrary indicates a hired entity is an independent contractor); *Ponyicky v. Brunswick*, 9th Dist. No. 13CA0039-M, 2014-Ohio-3540, ¶ 11 (same); *Trucco Constr. Co. v. Fremont*, 6th Dist. No. S-12-007, 2013-Ohio-415, ¶ 22 (same); *Wanamaker v. Anderzack-Pitzen Constr., Inc.*, 3d Dist. No. 3-12-02, 2012-Ohio-5232, ¶ 26 (same).

{¶ 29} Consequently, a material question of fact remains regarding whether Eitel's was Pleasant Township's employee when it allegedly negligently hoisted and towed the truck.  Pleasant Township, therefore, failed to show, beyond a doubt, the inapplicability of the R.C. 2744.02(B)(2) exception by reason that Eitel's acted as an independent contractor.

{¶ 30} In sum, due to the existence of material facts, we conclude that the trial court did not err in denying Pleasant Township judgment on the pleadings with regard to the negligence claim.  As a matter of law, Pleasant Township has not demonstrated entitlement to immunity from liability for its alleged negligence.[5]

{¶ 31} We next examine the question of whether the trial court erred in denying Pleasant Township judgment on the pleadings with regard to the conversion claim.  To address this argument, we begin with the same, unchallenged proposition as we began with above:  Pleasant Township is generally immune from liability under the first tier of the political-subdivision immunity test.  Pleasant Township argues that it retains this immunity under the second tier of the test because none of the R.C. 2744.02(B) exceptions subject it to liability for conversion of DSS' truck.  On appeal, DSS makes no response to this argument.  Before the trial court, DSS asserted that the R.C. 2744.02(B)(2) exception stripped Pleasant Township of its immunity.

{¶ 32} The R.C. 2744.02(B)(2) exception only applies where injury results from negligence.  *Inland Prods., Inc.*, 193 Ohio App.3d 740, 2011-Ohio-2046, at ¶ 39. Consequently, intentional torts do not trigger that exception to immunity.  *Wallace v. Rossford*, 6th Dist. No. WD-17-061, 2018-Ohio-2598, ¶ 30; *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 10 (12th Dist.).  Conversion is an intentional tort.  *Estate of Barney v. Manning*, 8th Dist. No. 94947, 2011-Ohio-480, ¶ 12; *Erie Ins. Exchange v. Lansberry*, 7th Dist. No. 07 CO 6, 2008-Ohio-1553, ¶ 65.  The

---

[5]  Given our conclusion, we do not address whether the R.C. 2744.02(B)(5) exception to immunity could also preclude judgment on the pleadings on the negligence claim.

R.C. 2744.02(B)(2) exception, therefore, does not allow DSS' conversion claim to evade Pleasant Township's general grant of immunity.

{¶ 33} To avoid this result, DSS argued below that conversion is not an intentional tort because intent is not a necessary element of conversion. DSS is mistaken. While conversion does not require a showing of wrongful intent to interfere with the owner's property rights, a plaintiff must demonstrate that the defendant intentionally exercised dominion or control over the property. *Vienna Beauty Prods. Co. v. Cook*, 2d Dist. No. 2015-CA-1, 2015-Ohio-5017, ¶ 12; *Lansberry* at ¶ 67. Therefore, conversion is an intentional tort, and the R.C. 2744.02(B)(2) exception does not revoke a political subdivision's general immunity to it. We thus conclude that the trial court erred in denying Pleasant Township judgment on the pleadings with regard to DSS' conversion claim.

{¶ 34} To summarize, we find the trial court did not err in denying Pleasant Township judgment on the pleadings with regard to DSS' negligence claim. However, the trial court erred in denying Pleasant Township judgment on the pleadings with regard to DSS' conversion claim. Accordingly, we overrule Pleasant Township's assignment of error in part and we sustain it in part. We thus affirm the judgment of the Franklin County Court of Common Pleas to the extent that it denied judgment on the pleadings on the negligence claim, but we reverse that judgment to the extent that it denied judgment on the pleadings on the conversion claim. We remand this matter to the trial court for further proceedings consistent with law and this decision.

*Judgment affirmed in part; reversed in part;*
*cause remanded.*

BRUNNER and McGRATH, JJ., concur.

McGRATH, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).