[Cite as *Harris v. Columbus*, 2016-Ohio-1036.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Howard F. Harris, | : | |
| Plaintiff-Appellant, | : | No. 15AP-792 |
| | | (C.P.C. No. 14CV-13556) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 15, 2016

**On brief:** *Howard F. Harris*, pro se. **Argued:** *Howard F. Harris*

**On brief:** *Ron O'Brien*, Prosecuting Attorney, *Scott O. Sheets*, and *Jesse W. Armstrong*, for appellee Zach Scott. **Argued:** *Scott O. Sheets*

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Timothy J. Mangan*, for appellees City of Columbus, Joren Byers, Bret Wilson, Chad Morrow, Jimmie Barnes, William Beard, Ken Kuebler, David Gitlitz, Ryan McNamara, and Alex Riling. **Argued:** *Timothy J. Mangan*

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Plaintiff-appellant, Howard F. Harris, proceeding pro se, appeals from a judgment of the Franklin County Court of Common Pleas granting: the motion for summary judgment filed by defendant-appellee, City of Columbus ("city"); the motion for judgment on the pleadings filed by defendant-appellee, Franklin County Sheriff Zach Scott; and the motion for summary judgment filed by defendants-appellees, city police officers Joren Byers, Bret Wilson, Sgt. Chad Morrow, Lt. Jimmie Barnes, Deputy Chief

Ken Kuebler, William Beard, David Gitlitz, Sgt. Ryan McNamara, and Alex Rilling ("police officers").  For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}   On January 18, 2013, city police were called to Harris' residence due to a report of a cutting or stabbing.  Officer Byers confronted and tasered Harris, arresting him at the scene.  Officers Rilling and Gitlitz carried Harris from the residence to a prisoner transport vehicle.  The other appellee police officers were involved in this incident only as support or supervisory personnel.  The police transported Harris to Mt. Carmel Hospital and then to the Franklin County Correctional Center, where he was held for four days.

{¶ 3}   Based on Columbus Police Officer Joshua Rhoads' investigation of Harris' dispute with his family at the residence, Harris was charged on the day of the incident with multiple counts of assault and domestic violence.  Harris was also charged that day with obstructing official business in connection with his confrontation with Officer Byers. In exchange for the dismissal of the assault and domestic violence charges, Harris pleaded no contest to the charge of obstruction of official business.  The trial court accepted Harris' plea and sentenced him to time served.

{¶ 4}   In December 2013, Harris filed suit in the Franklin County Court of Common Pleas against the city, the police officers, and Sheriff Scott, alleging state and federal claims against the appellees relating to Harris' arrest and confinement in jail in January 2013 (Franklin C.P. No. 13CV-13784).  The matter was removed to federal court and then remanded to state court after Harris filed an amended complaint no longer containing federal claims.  In March 2014, the city asserted political subdivision immunity and moved for dismissal as a party pursuant to Civ.R. 12(C).  On December 4, 2014, the trial court granted the city's motion to dismiss.  A few weeks later, Harris voluntarily dismissed the action without prejudice pursuant to Civ.R. 41.

{¶ 5}   On December 30, 2014, Harris refiled his state claims against the city, the police officers, and Sheriff Scott, in the Franklin County Court of Common Pleas (Franklin C.P. No. 14CV-13556).  On February 9, 2015, the city moved for summary judgment, arguing that the claims against it were barred by res judicata, collateral estoppel, and its immunity.  On February 17, 2015, Harris, represented by counsel, filed a response to the city's motion for summary judgment, asserting that while he disagreed with the ruling of

the trial court in the previous case, he agreed that the trial court's previous ruling addressed the same issues as presented in the city's subsequent motion. On March 13, 2015, the trial court filed a decision and entry granting the city's motion for summary judgment "[f]or the reasons already set forth" in the court's December 2014 decision.

{¶ 6}   On April 17, 2015, the police officers filed a motion for summary judgment and evidence to support the motion. Three days later, Harris, still represented by counsel, moved for an expansion of time to respond to the police officers' motion for summary judgment. The request for additional time was based on Harris' counsel's request to withdraw as counsel. On April 23, 2015, Sheriff Scott filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C).

{¶ 7}   On May 12, 2015, the trial court granted Harris additional time to respond to the pending dispositive motions, specifically permitting him to file his responses to those motions within 60 days of the date of the entry. The next day, the trial court granted Harris' counsel's request to withdraw as counsel. On June 16, 2015, Harris filed a pro se response to Sheriff Scott's motion for judgment on the pleadings. One week later, Sheriff Scott filed a reply in support of his motion. Although not permitted by rule, on July 4, 2015, Harris filed a memorandum contra to Sheriff Scott's reply. Harris did not file a memorandum in opposition to the police officers' motion for summary judgment.

{¶ 8}   On July 28, 2015, the trial court filed two decisions in this matter. First, the trial court filed a decision and entry granting Sheriff Scott's motion for judgment on the pleadings. The trial court found that, even after construing all the material allegations in the complaint in Harris' favor, none of the exceptions in R.C. 2744.02(B) apply to the facts, and Sheriff Scott is therefore entitled to immunity and judgment as a matter of law. Second, the trial court filed a decision and entry granting the police officers' motion for summary judgment. The trial court found that, because the police officers are political subdivision employees entitled to immunity under R.C. 2744.03(A)(6) and because no exception applies to remove the immunity, the police officers are entitled to judgment as a matter of law.

{¶ 9}   Harris timely appeals.

## II. Assignments of Error

{¶ 10} Harris assigns the following errors for our review:

[1.] The trial court erred in granting defendant-appellee(s), the police officers, motion for summary judgment under the implied immunity doctrine.

[2.] The trial court erred in not addressing the constitutional issue of whether a suspect not in custody, reentering his residence per police orders can be subsequently pursued into his residence without an arrest warrant.

[3.] The trial court erred in granting defendant-appellee, the City of Columbus' motion for summary judgment by applying the rules of immunity without application of the laws of agency and liability.

[4.] The trial court erred in granting the defendant-appellee the Franklin County Sherriff Zach Scott motion for summary judgment in finding that the sheriffs [sic] bad conduct was not addressed by any known statutes.

## III. Discussion

{¶ 11} Before addressing Harris' assignments of error, we address a preliminary matter. Following oral argument, Harris filed a "Memorandum Requesting Permission To Submit Affidavit of Evidence." Harris requests that this court consider certain evidentiary materials in connection with his appeal. In effect, Harris attempts to submit into the record materials that were not part of the record in the trial court. However, "evidence not presented in the trial court may not be considered on appeal." *Columbus v. Wright*, 48 Ohio App.3d 107, 110 (10th Dist.1988), citing *State v. Ishmail*, 54 Ohio St.2d 402 (1978). Therefore, we deny Harris' request to supplement the record on appeal with material not part of the trial court record.

### A. First Assignment of Error – Summary Judgment in Favor of Police Officers

{¶ 12} Harris' first assignment of error asserts the trial court erred in granting summary judgment in favor of the police officers because the officers are not entitled to immunity. This assignment of error lacks merit.

{¶ 13} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 11. If the nonmoving party does not so respond, summary judgment, if appropriate, may be entered in favor of the party seeking affirmative relief. *Id.;* Civ.R. 56(E).

{¶ 15} Harris argues the trial court erred in not finding that the police officers engaged in misconduct excluding them from immunity under R.C. 2744.03(A)(6). Under R.C. 2744.03(A) a political subdivision employee, sued in his or her individual capacity,[1] is immune from liability for "injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function," unless one of three exceptions applies. Specifically, immunity under R.C. 2744.03(A)(6) does

---

[1] A claim for damages against an officer or employee of a political subdivision acting in his or her official capacity is the equivalent of a claim against the political subdivision itself and is governed by R.C. 2744.02(A) and (B). *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 22. Harris' claims against the city are discussed below in reference to his third assignment of error.

not apply if:  the "employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities,"  R.C. 2744.03(A)(6)(a);  "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner,"  R.C. 2744.03(A)(6)(b); or "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."  R.C. 2744.03(A)(6)(c).

{¶ 16} Harris does not allege the police officers were acting outside the scope of their employment or official responsibilities, or that a statute expressly imposes civil liability on the officers.  Instead, Harris alleges they acted in a wanton manner or with a malicious purpose.  Thus, the trial court's analysis regarding the police officers' immunity centered on whether there were any genuine issues of fact regarding whether the police officers acted in a wanton manner or with a malicious purpose.  "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph two of the syllabus.  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at paragraph three of the syllabus.

{¶ 17} As the party requesting summary judgment, the police officers had the initial burden of demonstrating the absence of any genuine dispute regarding whether they acted wantonly or maliciously.  The police officers met their burden.

{¶ 18} Harris' allegations of malicious and wanton conduct against the police officers concern the police officers tasering him and carrying him to the transport vehicle after his arrest.  Specifically, Harris' complaint alleged that he was tasered without justification, that he was carried "in the most painful manner possible" to the police transport vehicle after his arrest, and that his head was intentionally banged against the vehicle.  (Dec. 30, 2014 Complaint, 6.)  The affidavit testimony of Officers Byers and Rilling, submitted in support of their motion for summary judgment, directly refuted those allegations.

{¶ 19} Officer Byers averred as follows:  Officer Byers was dispatched to Harris' residence on a report of a "cutting/stabbing" and he understood the circumstance at

Harris' residence to be on-going and life-threatening.  (Byers Affidavit, 1.)  Officer Byers arrived at the scene in his police cruiser, quickly exited the vehicle, and approached the residence with his weapon drawn.  He encountered two upset women in front of the Harris residence who informed him that another woman had been cut and was still in the residence with the "crazy" male suspect.  (Byers Affidavit, 2.)  Officer Byers then saw Harris "coming down the hallway of the house, covered with blood, and yelling in an aggressive and hostile manner" at him.  (Byers Affidavit, 3.)  Harris exited the house and "continued to yell as he came toward" Officer Byers.  (Byers Affidavit, 3.)  Officer Byers dropped his gun and told Harris to back up.  Harris began going back into the residence, and Officer Byers told him to stop.  Officer Byers ordered Harris not to go back into the residence because he had not located the victim and was concerned for her safety.  Officer Byers was also concerned that Harris might retrieve a weapon or barricade himself and the victim inside the residence.  Because Harris continued to go back into the residence, Officer Byers tasered him.

{¶ 20} Officer Rilling averred as follows: Officer Rilling and Officer Gitlitz transported Harris from inside his home to the transport vehicle.  Harris was told to stand up, but he refused.  Because Harris did not cooperate in any way, the officers had to physically lift and carry him to the transport vehicle.  The officers took steps to carry Harris in a manner that would avoid discomfort for him, which was difficult because he "remained limp."  (Rilling Affidavit, 2.)  Officer Rilling was unaware that Harris bumped his head as he was transported from the residence into the transport vehicle. Harris did not complain that he had bumped his head, and Harris did not mention any discomfort during the transport.

{¶ 21} Because the police officers met their initial burden under Civ.R. 56 by submitting evidence demonstrating that they did not engage in wanton or malicious conduct, Harris was then required to respond setting forth specific facts in the record showing that there was a genuine issue for trial.  Harris did not respond to the police officers' motion.  Ruling on the police officers' motion, the trial court determined that the affidavits of the police officers, as well as the other evidence submitted in support of the motion, demonstrated that no genuine issue remains as to whether the police officers acted wantonly or maliciously.  We agree that the evidence submitted and relied on by the

police officers in support of their motion, in particular the averments of Officers Byers and Rilling, demonstrated the police did not act wantonly or maliciously. Consequently, we find the trial court did not err in granting summary judgment in favor of the police officers.

{¶ 22} Accordingly, Harris' first assignment of error is overruled.

**B. Second Assignment of Error – Search and Seizure**

{¶ 23} In his second assignment of error, Harris asserts the trial court erred by failing to  address the issue of whether the police officers engaged in an unlawful search and seizure without an arrest warrant in violation of the Fourth Amendment. This assignment of error is meritless.

{¶ 24} Harris' original complaint filed in state court in December 2013 contained federal claims, and the matter was removed to federal court. After removal, Harris filed an amended complaint not containing any federal claims, resulting in the federal court remanding the matter to the Franklin County Court of Common Pleas. At the end of 2014, Harris voluntarily dismissed the action. One week later, he refiled his complaint in state court without asserting any federal claims. Because Harris did not raise any federal constitutional claim in the trial court in the refiled case, he cannot now assert a federal constitutional issue. *See State v. Awan,* 22 Ohio St.3d 120, 123 (1986) (failure to raise an apparent constitutional claim at the trial court level constitutes a waiver of that argument on appeal). Insofar as Harris alleges a violation of the Ohio Constitution, there is no private right of action for damages based on a violation of the Ohio Constitution. *See Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities,* 64 Ohio St.3d 252, 261 (1992) (finding no private cause of action for torts allegedly arising under the Ohio Constitution).

{¶ 25} Therefore, Harris' second assignment of error is overruled.

**C. Third Assignment of Error – Summary Judgment in Favor of the City**

{¶ 26} In his third assignment of error, Harris argues the trial court erred in granting summary judgment in favor of the city because the trial court did not properly apply the laws of agency. This assignment of error also has no merit.

{¶ 27} In Harris' first filed action, the city moved for judgment on the pleadings pursuant to Civ.R. 12(C). In his response to the motion, Harris, citing R.C. 2744.03(A)(6), argued that the city was not immune from liability because its employees acted maliciously and wantonly. The trial court granted the city's motion, determining that, even construing all the material allegations in the complaint in Harris' favor, the city is immune from Harris' claims pursuant to R.C. 2744.02(A)(1). When Harris refiled his action, he again named the city as a defendant. The city moved for dismissal of the claims against it, arguing the claims are barred by res judicata and collateral estoppel and are otherwise without merit. In response, Harris stated that while he disagreed with the trial court's previous decision on the city's Civ.R. 12(C) motion, and he "preserves such objection for appeal if necessary," he agreed that the court had "ruled on certain issues herein." (Feb. 17, 2015 Memorandum in Response.) The trial court granted the city's motion for summary judgment "for the reasons already set forth" in its earlier decision. (Decision and Entry, 1.)

{¶ 28} To the extent Harris preserved his argument based on R.C. 2744.03(A)(6) for the purpose of this appeal, that argument is unpersuasive. R.C. 2744.03(A)(6) addresses the immunity available to a political subdivision employee, who is sued in his or her individual capacity. Harris' argument, however, did not address the immunity of the city pursuant to R.C. 2744.02. *See Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 10 (determining the immunity of a political subdivision and an individual employee of the political subdivision requires different analyses). Furthermore, insofar as Harris attempts to assert additional arguments in this appeal, those arguments are waived. A party who fails to raise an argument in the trial court waives his or her right to raise the argument on appeal. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34. Accordingly, Harris' third assignment of error is overruled.

### D. Fourth Assignment of Error – Judgment in Favor of Sheriff Scott

{¶ 29} In his fourth assignment of error, Harris asserts the trial court erred in entering judgment in favor of Sheriff Scott because the trial court did not consider statutes prohibiting his conduct. This assignment of error lacks merit.

{¶ 30} Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Judgment on the pleadings is proper only when the material facts are undisputed, and the pleadings demonstrate that the movant is entitled to judgment as a matter of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Thus, when addressing a Civ.R. 12(C) motion, the court "is required to construe as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party." *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). A trial court's determination under this rule is restricted solely to the allegations in the pleadings, as well as any material incorporated by reference or attached as exhibits to those pleadings. *Curtis v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1214, 2006-Ohio-15, ¶ 24. Appellate review of motions for judgment on the pleadings is de novo, without deference to the trial court's determination. *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000).

{¶ 31} It is undisputed that Harris sued Sheriff Scott in his official capacity and not individually. Because Harris' claims against Sheriff Scott are the equivalent of claims against the political subdivision itself, they are governed by R.C. 2744.02(A) and (B). *See Lambert* at ¶ 22.

{¶ 32} Pursuant to R.C. 2744.02(A)(1), a political subdivision generally cannot be held liable for damages in a civil action for injury or loss. Determining a political subdivision's immunity under R.C. Chapter 2744 involves a three-tiered analysis. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7. The first tier requires a court to determine whether the matter involves a political subdivision performing either a governmental function or proprietary function. *Id.*; *see* R.C. 2744.02(A) (a political subdivision is generally immune from civil liability incurred in performing either a governmental function or proprietary function) . The second tier of the analysis requires a court to determine whether any of the specific exceptions set forth in R.C. 2744.02(B)(1) through (5) apply. *Colbert* at ¶ 8. These exceptions concern operation of motor vehicles, exercise of proprietary functions, failure to keep public roads and thoroughfares in repair, physical defects in public buildings, or specific liability imposed by statute in derogation of the general immunity granted by R.C. 2744.02. *Perkins v. Columbus Bd. of Edn.*, 10th Dist. No. 13AP-803, 2014-Ohio-2783, ¶ 10. If none of the exceptions to immunity in R.C. 2744.02(B) apply, then the analysis ends and the political subdivision is entitled to

immunity. *See id.* If any of the exceptions to immunity in R.C. 2744.02(B) apply, and no defense in that revised code section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply. *Colbert* at ¶ 9.

{¶ 33} Here, the trial court determined that Harris' claims against Sheriff Scott relating to his confinement at the Franklin County Correctional Center fail as a matter of law because Sheriff Scott is immune from such claims pursuant to R.C. 2744.02. We agree. Franklin County is a political subdivision, and the operation of a jail is a governmental function. R.C. 2744.01(C)(2)(h) and (F). Because Sheriff Scott was sued in his capacity as an official of Franklin County, he is entitled to a general grant of immunity under R.C. 2744.02(A)(1). *See Lambert.*

{¶ 34} Turning to the second tier of the analysis under R.C. 2744.02, Harris' argument on appeal regarding the exceptions to immunity is limited to R.C. 2744.02(B)(5), which applies "when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code." R.C. 2744.02(B)(5) further states that this exception does not apply merely because a particular statute imposes a responsibility or mandatory duty upon a political subdivision, provides for a criminal penalty, generally authorizes a political subdivision to sue or be sued, or uses the term "shall" in a provision pertaining to a political subdivision. Harris argues Sheriff Scott should be held liable for violating R.C. 5120.10, which addresses minimum standards for jails. Pursuant to R.C. 5120.10, the state director of rehabilitation and correction promulgates minimum standards for jails, and the division of parole and community services investigates jails for compliance with the standards. *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 41. However, R.C. 5120.10 does not expressly impose civil liability upon a county operating a jail below the promulgated minimum standards. *See Bell v. Franklin Cty. Commrs.*, 10th Dist. No. 92AP-872 (Dec. 10, 1992). Thus, Harris fails to demonstrate the applicability of R.C. 2744.02(B)(5).

{¶ 35} Because Sheriff Scott is immune under R.C. 2744.02(A)(1) and none of the exceptions in R.C. 2744.02(B) apply, the trial court properly entered judgment in favor of Sheriff Scott. Accordingly, Harris' fourth assignment of error is overruled.

## IV.  Disposition

{¶ 36} Having overruled all four of Harris' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., LUPER SCHUSTER and HORTON, JJ.

————————————