[Cite as *Formoso v. Parma Hts.*, 2026-Ohio-2189.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

JESSICA FORMOSO,                              :

    Plaintiff-Appellee,                :

    v.                                      :

CITY OF PARMA HEIGHTS, ET AL.,     :

    Defendants-Appellants.           :

No. 115875

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** June 11, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-118854

---

## *Appearances:*

Kelley & Ferraro, LLC, Brian R. Herberth, and Charles R. LoBello, *for appellee*.

Dickie, McCamey & Chilcote, P.C., Paul J. Schumacher, and Shaka S.J. Sadler *for appellants* City of Parma Heights, Parma Heights Fire Department, Jonathan Jay Hanzel, and Benjamin Daniel Lane.

Gordon Rees Scully Mansukhani, LLP, and Robert P. Lynch, Jr., *for appellants* City of Parma Heights, Parma Heights Police Department, Officer Michael Percun, and Officer Bradd Smith.

LISA B. FORBES, P.J.:

{¶ 1}   Defendants-appellants the City of Parma Heights ("the City"), the Parma Heights Fire Department ("Fire Department"), the Parma Heights Police Department ("Police Department"), Jonathan Jay Hanzel ("Hanzel"), Benjamin Daniel Lane ("Lane"), Officer Michael Percun ("Percun"), and Officer Bradd Smith ("Smith") (collectively, "appellants") appeal from the trial court's denial of their Civ.R. 12(B)(6) motion to dismiss plaintiff-appellee Jessica Formoso's ("Formoso") amended complaint ("Motion to Dismiss") on the grounds of immunity pursuant to R.C. Ch. 2744. After a thorough review of the facts alleged and the law, we reverse the trial court's judgment denying the motion to dismiss in part, affirm the trial court's judgment in part, and remand for further proceedings consistent with this opinion.

## I.   Factual Background and Procedural History

{¶ 2}   Formoso filed this action individually and as administrator of the estate of Gwen Laverne Guerrero, deceased (collectively "appellee" or "Formoso"), arising out of the death of her mother Gwen Laverne Guerrero ("Guerrero"). Formoso claimed that Guerrero died after she was run over by an ambulance operated by the City.

{¶ 3}   In her amended complaint ("Amended Complaint"), Formoso named the City, the Fire Department, the Police Department, Hanzel, Lane, Percun, and

Smith as defendants.[1]  Formoso raised claims of wrongful death and survivorship against all of these defendants, as well as separate claims for "willful, wanton, reckless, and negligent conduct" against the City, the police department and the Officers; "willful, wanton, reckless, and negligent conduct" against the City, the fire department and the emergency medical personnel; and "political subdivision tort liability — respondent [sic] superior" against the City, the police department, and Hanzel.

{¶ 4}  In her Amended Complaint, Formoso alleged the following facts.  On June 17, 2023, Parma Heights Police responded to a request for a welfare check of Guerrero by a resident of her apartment complex over concerns of a possible head injury.  Parma Heights police officers Percun and Smith (collectively, the "Officers") responded to Guerrero's apartment, ultimately kicked down her door to gain entry, and observed her lying on her bed with a large bruise on her face.  Based on Guerrero's behavior, the Officers contacted the Fire Department to request that "medical personnel provide care" to Guerrero.[2]  When they arrived on scene, Hanzel and Lane (collectively, the "Emergency Medical Personnel") advised the Officers that they were familiar with Guerrero and had responded to her apartment in the

---

[1] Formoso named additional defendants (an insurance company and John Doe defendants) that are not part of this appeal.

[2] The Amended Complaint states that the Officers observed that Guerrero's living room was in disarray and that they found Guerrero to be "delirious and out of touch with reality."

past. They also told the Officers that "it was extremely difficult to establish a baseline with her because her behavior is always different."

{¶ 5} The Emergency Medical Personnel examined and questioned Guerrero. They found her unstable on her feet, confused, evasive, and irritated. Hanzel "had to catch [Guerrero] as [she] was falling" and noted that "she has a history of falls." The Emergency Medical Personnel advised Guerrero to go to the hospital with them, "as they were concerned with her status and head injury." Guerrero refused.

{¶ 6} After Guerrero refused treatment, both the Officers and the Emergency Medical Personnel left her residence and provided no additional care. The Emergency Medical Personnel indicated that when they left, Guerrero was outside the door to her apartment, complaining about her door being broken and fixing her rug.

{¶ 7} While the Emergency Medical Personnel were still on the property of the apartment complex, but preparing to leave, Guerrero came out of the front entrance of her apartment and went to speak with the Emergency Medical Personnel. Despite Guerrero attempting to get the attention of the Emergency Medical Personnel by "pounding on the side of the ambulance," the ambulance, driven by Hanzel, "rapidly drove off . . . causing Guerrero to fall" and be run over by the ambulance, instantly killing her.

{¶ 8} Appellants' Civ.R. 12(B)(6) Motion to Dismiss argued that appellants are immune from liability under R.C. 2744.02 and 2744.03, and that Formoso failed to establish any exception to immunity.

{¶ 9} In their Motion to Dismiss, appellants also argued that the Police and Fire Departments are not legal entities with the capacity to be sued. Although Formoso acknowledged in her Amended Complaint that both the Police and Fire Departments were not "separate suable entit[ies], but rather sub-units of the City," the trial court did not grant the Motion to Dismiss with respect to these appellants.

{¶ 10} On November 5, 2025, the trial court issued a journal entry denying the appellants' Motion to Dismiss. The trial court found that "assuming all factual averments are true, and interpreting the complaint in favor of the nonmoving party, the court finds that at this stage there still exists a potential set of facts which may entitle the Plaintiff to relief."

{¶ 11} From this order, appellants raise the following assignment of error for our review:

> The trial court erred when it denied Defendant City of Parma Heights, Parma Heights Fire Department, Parma Heights Police Department, Jonathan Jay Hanzel, Benjamin Daniel Lane, Officer Michael Percun, and Officer Bradd Smith's Motion to Dismiss Plaintiff's Amended Complaint in its November 5, 2025, Journal Entry.

## II. Law and Analysis

### A. Standard of Review, Motion to Dismiss

{¶ 12} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint. *Assn. for Defense of Washington Local School Dist.*

*v. Kiger*, 42 Ohio St.3d 116, 537 (1989). The Civ.R. 12(B)(6) dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if, after presuming the truth of all factual allegations of the complaint and making all reasonable inferences in a nonmoving party's favor, it appears beyond doubt that the nonmoving party could prove no set of facts entitling the moving party to the requested relief. *Rosen v. Celebrezze*, 2008-Ohio-853, ¶ 13. In considering a Civ.R. 12(B)(6) motion to dismiss, the court is limited to the four corners of the complaint. *Thompson v. Cent. Ohio Cellular, Inc.*, 93 Ohio App.3d 530 (8th Dist. 1994). Finally, as pertinent to this case, the affirmative defense of immunity under R.C. Ch. 2744 may be the basis of a dismissal under Civ.R. 12(B)(6). *Main v. Lima*, 2015-Ohio-2572, ¶ 15 (3d Dist.).

{¶ 13} This court has recognized that "Ohio is a notice-pleading state that does not require a plaintiff to plead operative facts with particularity." *Carroll v. Cuyahoga Community College*, 2023-Ohio-3628, ¶ 17 (8th Dist.). "Notice pleading requires the plaintiff to set forth claims that concisely set forth only those operative facts sufficient to give fair notice of the nature of the action . . . ." (Cleaned up.) *Id.*, quoting *Diaz v. Cuyahoga Metro. Hous. Auth.*, 2010-Ohio-13, ¶ 15 (8th Dist.), quoting *DeVore v. Mut. Of Omaha Ins. Co.*, 32 Ohio App.2d 36 (7th Dist. Apr. 4, 1972). In a case involving political-subdivision immunity, this court has stated, "'Under the rubric of notice pleading, a plaintiff has no obligation to anticipate the assertion of an affirmative defense and allege facts to disprove that defense in its complaint.'" *Parra v. Jackson*, 2021-Ohio-1188, ¶ 28 (8th Dist.), quoting *DSS*

*Servs., L.L.C. v Eitel's Towing, L.L.C.,* 2019-Ohio-3158, ¶ 10 (10th Dist.). "'"[A] plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage."'" *Id.,* quoting *id.,* quoting *Scott v. Columbus Dept. of Pub. Utils.,* 2011-Ohio-677, ¶ 8 (10th Dist.).

{¶ 14} Ordinarily, the denial of a Civ.R. 12(B)(6) motion is not a final appealable order. However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." When the trial court denies a motion to dismiss where the motion was predicated on political subdivision immunity under R.C. Ch. 2744, the judgment is a final appealable order. *DiGiorgio v. Cleveland,* 2011-Ohio-5824, ¶ 11 (8th Dist.), citing *Hubbell v. Xenia,* 2007-Ohio-4839.

{¶ 15} On appeal, our review of the trial court's decision regarding a Civ.R. 12(B)(6) motion is de novo. *Perrysburg Twp. v. Rossford,* 2004-Ohio-4362, ¶ 5.

## B. Political-Subdivision Immunity Under R.C. 2744.02

### 1. Parma Heights Police Department and Parma Heights Fire Department

{¶ 16} We agree with the City's argument, which was conceded by Formoso, that the Parma Heights Police and Fire Departments are not sui juris and cannot be sued as separate entities. *See Friga v. E. Cleveland,* 2007-Ohio-1716, ¶ 9, fn. 3 (8th Dist.); *see also McDade v. Cleveland,* 2012-Ohio-5515, ¶ 9-11 (8th Dist.). We, therefore, find that the trial court erred in denying the Motion to Dismiss as to the

Police Department and Fire Department, and sustain the assignment of error as relates to the Parma Heights Police and Fire Departments.

{¶ 17} We next consider Formoso's case against the City.

## 2. City of Parma Heights

{¶ 18} Whether a political subdivision is immune from tort liability under the Political Subdivision Tort Liability Act "involves a three-tiered analysis." *Moore v. Lorain Metro. Hous. Auth.*, 2009-Ohio-1250, ¶ 9. The first tier provides for a general grant of immunity for any action or omission of the political subdivision or its employees in connection with a governmental or proprietary function. *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 7; *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 555-557 (2000); R.C. 2744.01(F); R.C. 2744.02(A)(1). To overcome the general grant of immunity, a plaintiff must show that one of the exceptions in R.C. 2744.02(B) applies. *Soler v. Cleveland Metro. School Dist.*, 2025-Ohio-2151, ¶ 15 (8th Dist.). If no exception applies, the political subdivision is immune from liability. *Id.* If an exception applies, the burden shifts back to the political subdivision to demonstrate that one of the defenses in R.C. 2744.03 applies. *Id.*

### a. First Tier — Presumption of Immunity

{¶ 19} The parties agree that tier one of the immunity analysis is satisfied and that the City enjoys a general presumption of immunity. We, therefore, move to the second tier of the immunity test: whether exceptions in R.C. 2744.02(B) pierce the City's immunity. *Moore* at ¶ 9.

## b. Second Tier — Exception to Immunity

{¶ 20} In response to the City's claim of immunity, Formoso argued that the exception found in R.C. 2744.02(B)(1) applies. R.C. 2744.02(B)(1) provides that "political subdivisions may be liable in damages for injury, death, or loss to person or property caused by negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."

{¶ 21} The City responds that, if the court finds that R.C. 2744.02(B)(1) pierces the City's immunity, R.C. 2744.02(B)(1)(c) reinstates immunity. R.C. 2744.02(B)(1)(c) states that a political subdivision is nevertheless immune for the negligent operation of a motor vehicle by its employees, when

> [a] member of an emergency medical services owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506 or a driver's license issued pursuant to Chapter 4507 of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

### i. Allegations Concerning the Accident in the Parking lot of Guerrero's Apartment Complex

{¶ 22} On appeal, Formoso argues that upon exiting the apartment complex, Hanzel, and his "co-pilot" Lane, ran over Guerrero with the ambulance, killing her instantly. Formoso contends that the investigation into the incident revealed that two of Guerrero's handprints were on the side of the ambulance in the general area where she was struck. Although Hanzel "indicated that neither he nor Lane, saw or

heard Guerrero near the ambulance" prior to him running her over, Formoso argues that prior to getting into the ambulance, Hanzel "saw or should have seen . . . Guerrero walking from her apartment complex door toward the ambulance."

{¶ 23} Formoso further argues that Hanzel and Lane had a duty to act "lawfully and reasonably and to not act negligently, willfully, wantonly, maliciously and/or in bad faith." According to Formoso, the motor-vehicle immunity defense in R.C. 2744.02(B)(1)(c) is not available to the City because at the time of Guerrero's death, the emergent circumstances were alleviated, and so the emergency medical personnel were not responding to, or completing a call for, emergency medical care or treatment.[3]

{¶ 24} The City maintains that it is entitled to immunity from liability for actions arising out of Hanzel's operation of the ambulance. First, the City asserts that the motor-vehicle exception in R.C. 2744.02(B)(1) does not apply to deprive the City of immunity because Hanzel's actions were not negligent. Additionally, the City appears to argue that, even if Emergency Medical Personnel operated the ambulance negligently, the City's immunity is restored under R.C. 2744.02(B)(1)(c), because Hanzel and Lane's actions did not constitute willful or wanton misconduct as a matter of law. Moreover, in response to Formoso's argument that Hanzel and Lane were not "responding to or completing a call for emergency medical care or treatment," the City contends that the initial call for the welfare check is not the

---

[3] Formoso argues that at the time of the accident, Hanzel was operating an ambulance while completing a "non-emergency" call to Guerrero's apartment for a welfare check.

relevant call under R.C. 2744.02(B)(1)(c) to reestablish immunity; it is the Officers' subsequent call to paramedics that brings their actions under the R.C. 2744.02(B)(1)(c) exception. The City contends that the ambulance operated by Hanzel was completing a call for medical treatment when Guerrero was mortally wounded.

{¶ 25} As previously stated, R.C. 2744.02(B)(1) provides an exception to political-subdivision immunity for damages arising out of the negligent operation of a motor vehicle. However, a defense to liability exists under R.C. 2744.02(B)(1) if a

> member of an emergency medical service owned and operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license pursuant to Chapter 4506 or a driver's license issued pursuant to Chapter 4507 of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

R.C. 2744.02(B)(1)(c).

{¶ 26} We disagree with Formoso's argument that the Emergency Medical Personnel were not dispatched to Guerrero's residence following a call for emergency medical care, as contemplated under R.C. 2744.02(B)(1)(c). Here, Officers contacted the Emergency Medical Personnel to request that "medical personnel provide care" to an individual who was initially found to be unresponsive, appeared to have sustained a recent head injury, and was acting confused and agitated. Although the Revised Code has not defined "emergency medical care or treatment," "courts have interpreted the word 'emergency' broadly as it applies to the characterization of situations to which emergency personnel respond."

*Campbell v. Colley*, 113 Ohio App.3d 14, 20 (4th Dist. 1996), quoting *Moore v. Columbus*, 98 Ohio App.3d 701, 706 (10th Dist. 1994); *Goebel's Emergency Med. Serv., Inc. v. Bd. of Commrs.*, 58 Ohio App.3d 25, 26-27 (6th Dist. 1989).

{¶ 27} We also disagree with Formoso's argument that returning from a call to render such services could not entitle the City to immunity under this section. R.C. 2744.02(B)(1)(c) contemplates an ambulance returning from the call for emergency-medical care based on the "completing a call" language. This court has previously concluded that

> R.C. 2744.02(B)(1)(c) is intended to extend immunity based on the initial nature of the call, regardless of whether EMS personnel subsequently learn that immediate assistance is unnecessary . . . . We must consider the word completing to allow immunity for return trips to an ambulance's base or for transporting non-emergency patients, or the words responding and completing will not have different meanings.

*Bostic v. Cleveland*, 2002-Ohio-333, ¶ 8 (8th Dist.); *but see Pakeer v. Cleveland*, 2023-Ohio-4213, ¶ 18-21 (8th Dist.) (arguing that *Bostic* offers an overly broad interpretation of "completing a call," which includes situations where the "emergency had ended, when through the exercise of their judgment, the EMS professionals determined that no emergency medical care or treatment was necessary").

{¶ 28} We find that Formoso has sufficiently pled facts that, if true, could entitle her to relief regarding whether the Emergency Medical Personnel's actions were negligent as well as whether they rise to the level of willful or wanton misconduct. Specifically, Formoso alleged that Guerrero was "pounding on the side

of the ambulance" when the Emergency Medical Personnel, who had previously observed her to be confused and unstable, caused her to fall and then ran her over while rapidly driving away. We, therefore, overrule the appellants' assignment of error with respect to the City's liability for damages relating to the ambulance running over Guerrero.

### ii. Allegations Concerning Failure to Render Rejected Services

{¶ 29} In the Amended Complaint, Formoso asserted that the Officers failed to provide Guerrero with the proper care for an individual in her condition by not taking her into custody and employing emergency hospitalization. Specifically, she alleged they acted negligently, willfully, wantonly, recklessly, and/or in bad faith by ignoring Guerrero's cognitive issues, her severely bruised face, her history of falls, and her mental issues; by disregarding other residents' concerns; and by not compelling her to go to the hospital for an examination.

{¶ 30} Formoso also asserted in her Amended Complaint that the Emergency Medical Personnel breached their duty as paramedics when they left Guerrero's residence after she refused treatment, despite finding her unstable on her feet, confused, evasive, and irritated.

{¶ 31} The City argues that there is no exception to political-subdivision immunity for the alleged failure by the Officers or the Emergency Medical Personnel to take Guerrero into custody and to render medical services after she allegedly refused to accompany the Emergency Medical Personnel to the hospital. We agree.

{¶ 32} There is a presumption of broad immunity for political subdivisions. *Fried v. Friends of Breakthrough Schools*, 2020-Ohio-4215, ¶ 22 (8th Dist.). R.C. 2744.02 "does not place the burden on the political subdivision to demonstrate that no exceptions apply; 'rather, once the first tier has been met, the plaintiff must demonstrate one of the statutorily defined exceptions apply in order to proceed.'" *Id.*, quoting *Sims v. Cleveland*, 2009-Ohio-4722, ¶ 15 (8th Dist.), citing *Walsh v. Mayfield*, 2009-Ohio-2377, ¶ 12 (8th Dist.). "To survive a motion to dismiss based on political subdivision immunity, it must be clear that no set of facts and allegations in their complaint supports liability" against the political subdivision. *Fried* at ¶ 48.

{¶ 33} Formoso has not articulated, and we are not aware of, any exception to political-subdivision immunity based on employees' alleged failure to provide proper care to an individual during a welfare check and emergency-services response. For these reasons, the assignment of error is sustained regarding the City's liability for alleged failure to render rejected services.

### c. Third Tier — Reinstatement of Immunity

{¶ 34} Finally, we note that R.C. 2744.03 may operate to reinstate political-subdivision immunity if any of R.C. 2744.02(B)'s exceptions are found to apply. *Perlberg v. Cleveland*, 2009-Ohio-1788, ¶ 15 (8th Dist.). However, this court will not examine the third tier of the immunity analysis under R.C. 2744.03, because neither party argued its applicability.

{¶ 35} Pursuant to App.R. 16(A)(7), an appellant shall include in its appellate brief an argument containing its contentions with respect to each assignment of

error and "the reasons in support of the contentions, with citations to the authorities, statutes, and part of the record on which appellant relies." *Bryant M Props. L.L.C. v. Graves*, 2023-Ohio-4127, ¶ 6 (8th Dist.). Having not done so here, we decline to make any argument for appellants in this regard.

### C. Political-Subdivision Employee Immunity Under R.C. 2744.03(A)(6)

{¶ 36} R.C. 2744.03(A)(6) establishes the framework of analysis for determining whether an employee of a political subdivision is entitled to individual immunity. It provides that an employee of a political subdivision is immune from tort liability unless one of three exceptions applies. Pertinent to this appeal is subsection (b), which provides an exception to immunity where "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner . . . ." R.C. 2744.03(A)(6).

{¶ 37} Malicious conduct is conduct "'indulging or exercising malice; harboring ill will or enmity.'" *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453 (12th Dist. 1991), quoting *Teramano v. Teramano*, 6 Ohio St.2d 117, 118 (1996). "'Malice' can be defined as the 'willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified.'" *Jackson* at 453-454, quoting *Bush v. Kelley's, Inc.*, 18 Ohio St.2d 89, 92 (1969). "Bad faith" connotes a "'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Jackson v. McDonald*, 144 Ohio

App.3d 301, 309 (5th Dist. 2001), quoting *Jackson v. Butler Cty.* at 309; *see also State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 2010-Ohio-5073, ¶ 8.

{¶ 38} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 2012-Ohio-5711, paragraph three of the syllabus. "Reckless conduct is conduct characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

### 1. Police Officers Percun and Smith

{¶ 39} In her Amended Complaint, Formoso alleged that "[d]espite reasonable signs of impairment, cognitive decline, delusion, and hallucinations [the Officers] left and terminated the welfare check, leaving Ms. Guerrero to her own devices." Specifically, as alleged by Formoso, the Officers were reckless in failing to provide Guerrero "with the proper care afforded to an individual in her condition by not taking her into custody and employing emergency hospitalization."

{¶ 40} We note that the issue of whether conduct is wanton or reckless is usually reserved for the jury. *Morrison v. Warrensville Hts.*, 2022-Ohio-1489, ¶ 53 (8th Dist.). However, after presuming all factual allegations here to be true and making all reasonable inferences in Formoso's favor, we find Formoso did not allege any facts that if proven true would support the conclusion that the Officers behaved with "malicious purpose, in bad faith, or in a wanton or reckless manner," by failing

to pursue emergency hospitalization.  To the contrary, Formoso alleged that when responding to Guerrero's apartment, the Officers kicked down Guerrero's door when they were unable to gain entry, and in response to Guerrero's concerning behavior, they contacted the Fire Department to request that "medical personnel provide [her] care."  These facts, if proven true, do not rise to the level of "wanton or reckless," and as such cannot pierce the Officers' immunity.   Therefore, the assignment of error is sustained as to all claims against Percun and Smith in their individual capacity.

### 2. Emergency Medical Personnel Hazel and Lane

{¶ 41} Formoso argues that Hanzel and Lane should be held liable, in their individual capacities, for acts or omissions relating to Guerrero's care as well as the accident involving the ambulance outside of Guerrero's apartment.

{¶ 42} Formoso argues that Hanzel and Lane breached their duty as paramedics when they left Guerrero's residence after she refused treatment, despite finding her unstable on her feet, confused, evasive, and irritated.

{¶ 43} Formoso also argues that an "unbalanced elderly woman near a running motor vehicle creates a great probability that harm will result" and that Hanzel and Lane "failed to exercise the proper level of care when they saw Guerrero leave her apartment complex and approach the ambulance, instead electing to drive off."  Formoso asserted that Hanzel and Lane's behavior in leaving the parking lot and running over Guerrero was wanton and reckless.  These allegations, if proven,

may entitle Formoso to relief regarding whether Hanzel and/or Lane's actions were wanton or reckless, triggering the exception to individual immunity.[4]

{¶ 44} Accordingly, this assignment of error is overruled with respect to Hanzel's and Lane's potential individual liability.

{¶ 45} We emphasize that entitlement to immunity is "a separate question from the plaintiff's ability to establish the elements of his or her claim." *See Argabrite v. Neer*, 2016-Ohio-8374, ¶ 10. In the instant appeal, we only resolve the question of whether Formoso's Amended Complaint survives Appellant's Civ.R. 12(B)(6) Motion to Dismiss pursuant to R.C. 2744.02 and 2744.03. We express no opinion on whether Formoso could ultimately prove the elements of the remaining claims against the City and its employees. Our resolution of the immunity question is not to be construed to reflect on the strength or weakness of Formoso's claims beyond the narrow context of this Motion to Dismiss predicated on the immunity of the City and its employees.

{¶ 46} The assignment of error is sustained in part and overruled in part.

---

[4] We note that both parties' arguments examine the applicability of R.C. 2744.03(A)(6) to the individual liability of Hanzel and Lane. However, R.C. Ch. 4765 more specifically governs certain aspects of immunity related to the provision of emergency-medical services, and R.C. 4765.49 grants immunity to paramedics that goes beyond that granted in R.C. 2744.02. *See Bostic*, 2002-Ohio-333, at ¶ 7 (8th Dist.). The City here did not argue immunity under R.C. 4765.49, and has thus waived that argument for purposes of this appeal. We note that the application of R.C. 4765.49 would require consideration of whether individual defendants Hanzel and Lane could be held liable based on conduct that was "willful or wanton," as opposed to the lower "reckless" standard found in R.C. 2744.03.

**{¶ 47}** Judgment affirmed in part and reversed in part. Case remanded to the trial court for further proceedings consistent with this opinion, namely that Formoso's claims against the Parma Heights Fire and Police Departments be dismissed because neither is an entity capable of being sued and that Formoso's claims against individual police officers Percun and Smith be dismissed because the allegations in the Amended Complaint, even if proven true, are insufficient to avoid immunity. The trial court's judgment is affirmed in all other respects, and this case shall proceed on all other claims raised against these appellants in Formoso's Amended Complaint.

It is ordered that appellee and appellants share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR